UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| CROSSROADS OF TEXAS, LLC; CHILDREN'S CENTER OF VICTORIA, LLP, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. V-05-89 |
| GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY; GREAT-WEST HEALTHCARE OF TEXAS, INC.; PRIVATE HEALTHCARE SYSTEMS, INC.; DOES 1 THROUGH 100 | § § § § § § | |
| Defendants. | § | |

**MEMORANDUM & ORDER**

Pending before the Court is Plaintiffs' Motion to Remand (Dkt. #9). The Court, having reviewed the motion, the responses of the parties, and the applicable law, is of the opinion that the motion should be GRANTED in part and DENIED in part as explained below.

**Factual and Procedural Background**

Plaintiffs Crossroads Care of Texas, LLC, doing business as American Regional Health Center ("ARHC") and Children's Center of Victoria, LLP ("CCV") are business associations of physicians practicing in Victoria, Texas. Defendants Great-West Life & Annuity Insurance Company ("GWL") and its subsidiary Great-West Health Care of Texas, Inc. ("GWH") are insurance companies responsible for administering the benefit claims of multiple ERISA plans not named, but implicated, by this action. Defendant Private Healthcare Systems, Inc. ("PHCS") is a large Preferred Provider Organization Network ("PPO") tasked with negotiating discounted rates

1

with physicians and contracting that discounted fee schedule to insurers for a brokerage fee.

PHCS negotiated a PPO contract ("PHCS PPO contract") with Plainitffs that would bind Plaintiffs to a discounted fee schedule and obligate PHCS to broker that contract to insurers willing to be bound by all the terms of the PHCS PPO contract. GWL and GWH (collectively "Great-West") were originally members of PHCS and, as such, would have legitimately been able to participate in the PHCS PPO contract negotiated with Plaintiffs. However, on March 1, 1996, Great-West left the PHCS system in the Victoria, Texas area and thereby forfeited its right to participate in the PHCS PPO contract. Despite this, Plaintiffs allege that Great-West continued to claim the benefits of the PHCS PPO contract by placing the PHCS name and logo on the identification cards issued to participants in its administered plans. These identification cards allowed patients to visit physicians within the PHCS network and file claims, via the physician provider, with Great-West for the discounted rate under the PHCS PPO contract. By administrative error, Plaintiffs accepted the allegedly fraudulent discounted rate from Great-West for an alleged approximately 3,500 separate claims processed from August 3, 1996 (the earliest date for which Plaintiffs have retained accounting records) until this action was filed in 2005.

In May 2004, Plaintiffs discovered that Great-West had allegedly fraudulently used PHCS's contracted discount with Plaintiffs. Plaintiffs issued a demand to Defendants for amounts representing the difference between the provider's full fee and the discounted rate under the PHCS PPO contract for the claims fraudulently processed by Great-West. Great-West responded with a demand for reimbursement of all claims incorrectly paid under the theory that Plaintiffs should pursue the patients for the full fee and return claims amounts improperly processed. Plaintiffs also allege that their records indicate that, prior to September 1, 2001, Great-West improperly processed claims using the One Health PPO discount to which Plaintiffs were not contracting parties.

2

From September 1, 2001 onward, Plaintiffs did enter into a contract with Great-West through a Preferred Provider Organization Network, Health First of Texas, P.A. ("HFT"). The contract with HFT is entitled "One Health Plan of Texas, Inc., Health First of Texas, P.A. PPO Medical Group Agreement" ("One Health Plan PPO contract"). Allegedly, Great-West processed claims with Plaintiffs that should have been covered by the One Health Plan PPO contract as "out-of-network" claims, thereby underpaying Plaintiffs.

Plaintiffs originally filed the present cause of action in the 24th Judicial District Court, Victoria, Texas, Cause No. 05-8-63,099-A, on August 5, 2005. Defendants removed the case to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. §§ 1331, 1441(a). Plaintiffs have filed the present motion praying that the Court remand the action to Texas State court.

## Standards for Removal & Remand

A civil action filed in state court may be removed to federal court if the claim is one "arising under" federal law. 28 U.S.C. §§ 1331, 1441(a). Because the federal courts are courts of limited jurisdiction, a party removing an action from state to federal court bears the burden of establishing that court's proper jurisdiction. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir.1988), *appeal after remand*, 915 F.2d 965 (5th Cir.1990), *aff'd*, 503 U.S. 131 (1992); *Century Assets Corp. v. Solow*, 88 F. Supp.2d 659, 660 (E.D.Tex.2000). The removing party's burden "extends not only to demonstrating a jurisdictional basis for removal, but also necessary compliance with the requirements of the removal statute." *Albonetti v. GAF Corp. Chem. Group*, 520 F. Supp. 825, 827 (S.D.Tex.1981). Doubts about whether an action may be removed should be resolved against removal and in favor of remanding the case to state court. *Powers v. South Central United Food & Commercial Workers Unions & Employers Health & Welfare Trust*, 719 F.2d 760, 762 (5th

Cir.1983); *Monterey Mushrooms, Inc. v. Hall*, 14 F. Supp.2d 988, 990 (S.D.Tex.1998); *Scott v. Communications Servs., Inc*., 762 F. Supp. 147, 150 (S.D.Tex.1991).

Ordinarily, unless the parties are diverse, removal is only proper if the plaintiff's well-pleaded complaint asserts causes of action under federal law which support federal question jurisdiction. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). "Where potential remedies exist under both state and federal law, a plaintiff may choose to proceed only under state law and avoid federal court jurisdiction." *Baylor Univ. Medical Center v. Arkansas Blue Cross Blue Shield*, 331 F. Supp. 2d 502, 505-506 (N.D. Tex. 2004) (citing *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 366 (5th Cir. 1995). "There is an exception to the well-pleaded complaint rule, though, if Congress 'so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) (en banc) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). State law claims seeking relief within the scope of the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B) must be treated as arising under federal law, and as such, are removable to federal court even if relief is not explicitly plead under federal law.

**Analysis**

In their Original Petition, Plaintiffs allege causes of action for violation of Texas Prompt Pay Statutes, deceptive insurance practices under the Texas Insurance Code, quantum meruit, fraud, interference with contract, theft of service, and conspiracy. Those causes of action, as plead, are exclusively state law claims. However, Defendants contend that Plaintiffs' claims are for ERISA benefits under ERISA § 502(a)(1)(B). Defendants explain that ERISA plan participants assign their rights to seek reimbursements due from the insurer when they allow their physician provider to file

a claim for benefits on their behalf. When the insurer fails to properly pay the claim, the physician provider has a derivative cause of action for ERISA benefits. Thus, Defendants contend, Plaintiffs' claims for reimbursement can only be sought through the civil enforcement provision of ERISA and are thus exclusively federal claims properly heard in federal court.[1]

Plaintiffs contend that their causes of action are not derivative in nature, but are based directly on the contractual relationship that exists between the insurer, the PPO, and the provider networks and have only a tangential and tenuous impact on the ERISA plans administered by Defendant insurers. Lawsuits brought by independent third-party providers, such as Plaintiffs, based on "run-of-the-mill state-law claims—although obviously affecting and involving ERISA plans—are not preempted by ERISA," *Baylor Univ. Medical Center*, 331 F. Supp. 2d at 507 (citing *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 833 (1988)), so long as they don't directly affect "the relationship between traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Id.* Conversely, an independent third-party provider's "state law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud are preempted by ERISA when the [provider] seeks to recover benefits owed under a plan to a plan participant who has assigned her right of benefits to the [provider]." *Id.*; see *Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236 (5th Cir. 1990); *Herman Hospital v. MEBA Medical & Benefit Plan*, 845 F.2d 1286 (5th Cir. 1988). Thus, "[t]he critical question for the [C]ourt[] is whether the [Plaintiffs'] claim[s] [are] based on [] direct cause[s] of

---

[1] "The Supreme Court has held that state-law claims seeking relief within the scope of ERISA § 502(a)(1)(B) must be recharacterized as arising under federal law, and as such, are . . ." completely preempted. *Baylor Univ. Medical Center*, 331 F. Supp. 2d at 505-506 (citing *Met. Life*, 481 U.S. at 60). ERISA § 502(a)(1)(B) allows a plan "participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ."

5

action against [Defendants], in which situation [they are] not preempted, or whether [they are] derivative to the patient[s'] cause[s] of action, where ERISA applies." *Orthopaedic Surgery Associates of San Antonio, P.A., et al. v. Prudential Health Care Plan, Inc.*, 147 F. Supp. 2d 595, 603 (W.D. Tex. 2001).

In *Orthopaedic Surgery Associates of San Antonio, P.A., et al. v. Prudential Health Care Plan, Inc.*, 147 F. Supp. 2d 595 (W.D. Tex. 2001), which bore facts very similar to those at bar, the defendant insurance company removed plaintiff health care provider's suit for reimbursement of incorrectly processed claims on the grounds that a "challenge to the processing and payment of claims is, in fact, a derivative claim for benefits under ERISA plans and is therefore completely preempted under ERISA's civil enforcement provision . . . ." *Id.* at 598. The district court found that, "where coverage exists," a claim for remuneration by a health care provider against an insurer is preempted if that claim is "dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan." *Id.* at 600 (citing *Transnational Hospital Corp. v. Blue Cross & Blue Shield*, 164 F.3d 952, 955 (5th Cir. 1999). However, the district court held that the existence of a provider contract directly between the health care providers and the insurer gave the health care providers a cause of action independent of their derivative rights to claim benefits under their patients' ERISA plans. *Id.* at 601. The Court based its analysis on a Ninth Circuit opinion that held "[p]roviders' claims, which arise from the terms of their provider agreements and could not be asserted by their patient assignors, are not claims for benefits under the terms of ERISA plans, and hence do not fall within 502(a)(1)(B)." *Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1047 (9th Cir. 1999). The Western District of Texas court in *Orthopaedic Surgery Associates* ultimately remanded the action to Texas State court on the grounds that a claim by a provider for payment due under a contractual agreement with an insurer is not converted into a claim

6

for benefits under ERISA simply because "these medical providers obtained assignments of benefits from beneficiaries of ERISA-covered health care plans . . . ." *Orthopaedic Surgery Associates*, 147 F. Supp. 2d at 600.

Similar to the claims in *Orthopaedic Surgery Associates*, Plaintiffs' claims for payments denied as "out-of-network" under the One Health Plan PPO contract should be analyzed from the perspective of whether the claims are "derived from the rights of plan beneficiaries to recover benefits" or are based on the independent contractual relationship between non-ERISA entities. Plaintiffs allege that they are party to the One Health Plan PPO contract through Health First of Texas, P.A. Plaintiffs allege that Defendants contractually agreed to process all providers who are parties to the One Health Plan PPO contract as "in-network" claims and have failed to do so as to Plaintiffs. Plaintiffs' claims are based on breach of the One Health Plan PPO contract and the direct relationship between the parties to that agreement. The fact that Plaintiffs could have sued for the same amounts as assignees of beneficiaries' rights under ERISA-regulated plans does not convert their independent claim to enforce a third-party contract into a claim for ERISA benefits. See *Rogers v. CIGNA Healthcare of Texas, Inc.*, 227 F. Supp. 2d 652, 655 (W.D. Tex. 2001). The Supreme Court applied complete preemption to claims falling under ERISA § 502(a)(1)(B) to prevent plan beneficiaries and their assignees from pursuing benefits under state law claims and thereby subjecting ERISA plan administration to varying state laws. See *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 832-33 (1988). The Fifth Circuit has recognized that state law claims that are neither based on the terms of an ERISA plan nor brought by or against any party to an ERISA plan are generally not subject to complete preemption. *Memorial Hospital System v. Northbrook Life Insurance Company*, 904 F.2d 236, 245 (5th Cir. 1990). Even where such state law claims have a connection with ERISA plans, the impact of such claims is too tenuous, remote, and

peripheral to warrant preemption. *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 100 (1983). Therefore, the Court finds that Plaintiffs' claims for breach of the One Health Plan PPO contract are not preempted by ERISA § 502(a)(1)(B).

However, Plaintiffs' causes of action based on Defendants' alleged misuse of the PHCS PPO contract are analyzed somewhat differently because they are not predicated on existing coverage. See *Orthopaedic Surgery Associates*, 147 F. Supp. 2d at 600 (citing *Transnational Hosps. Corp. v. Blue Cross & Blue Shield of Texas, Inc.*, 164 F.3d 952, 955 (5th Cir. 1999). Plaintiffs allege that Defendants were not party to the PHCS PPO contract and processed claims under its terms improperly. Where the ERISA plan beneficiary was not "covered by the terms of the health care policy," the provider acted as an independent third-party and preemption is not implicated. *Transnational Hosps.*, 164 F.3d at 955. The ERISA plan beneficiaries for whom Defendants allegedly erroneously processed claims under the PHCS PPO contract had no right to those benefits under the terms of their ERISA plans. Therefore the services provided to those beneficiaries by Plaintiffs were independent of any ERISA plan. Because the ERISA plan participants whose claims were erroneously processed by Defendants had no coverage under the PHCS PPO contract, Plaintiffs have no derivative rights to sue for benefits under ERISA § 502(a)(1)(B). Therefore, Plaintiffs claims based on Defendants' alleged improper use of the PHCS PPO contract are not preempted.

## Attorneys Fees and Costs

Additionally, Plaintiffs ask the Court to order Defendants to pay Plaintiffs' costs and attorney's fees, as provided in 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal.") and FED. R. CIV. P. 54(d) (permitting recovery of attorneys' fees and other costs). As

grounds for this motion, Plaintiffs assert that Defendants "had previously been involved in litigation where ERISA preemption removal was unsuccessfully utilized" and were therefore on notice that their removal was improper. The Court finds that the nonremovability of this case is not so obvious as to warrant an award of costs and attorney's fees. See *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993) (stating that, by amending § 1447(c), Congress did not intend the "routine imposition of attorney's fees against the removing party when the party properly removed"). "When removability of the case is plausible a district court should deny costs and fees." *Baylor University Medical Center v. Arkansas Blue Cross Blue Shield*, 331 F. Supp. 2d 502, 512 (N.D. Tex. 2004) (citing WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3739, at 488 (3d ed. 1998)). Defendants made a plausible argument for removal, given that Plaintiffs are both independent third-party providers and assignees of ERISA benefits. Therefore, Plaintiffs' request for costs and attorney's fees is DENIED.

## Conclusion

For the reasons stated above, Plaintiffs' Motion to Remand (Dkt. # 9) is hereby GRANTED in part and DENIED in part.

It is so ORDERED.

Signed this 26th day of January, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE